UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DONOVAN NEW, | ) | CR. 05-50058-KES |
| | ) | CIV. 08-5066-KES |
| Petitioner, | ) | |
| | ) | REPORT AND |
| vs. | ) | RECOMMENDATION |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**INTRODUCTION**

This matter is before the court pursuant to petitioner Donovan New's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[1] [Docket 105]. Of the six claims of ineffective assistance of counsel originally presented by Mr. New, only one remains.[2] As to that claim, an evidentiary hearing was held on October 27, 2009, at which Mr. New, his counsel Mr. John Rusch, and Assistant United States Attorney Mara Kohn were present. Mr. New's remaining § 2255 claim was referred to this magistrate

---

[1]Mr. New's federal criminal case number is 5:05-cr-50058-KES. When Mr. New filed his § 2255 petition, a civil case file, 5:08-cv-5066-KES, was opened for statistical purposes only. All docket numbers referenced in this report and recommendation relate to his criminal file.

[2]This district court dismissed the other five claims prior to the hearing on the one remaining claim. See Docket No. 134, adopting in part and rejecting in part this court's report and recommendation at Docket No. 125.

judge for a report and recommendation to the district court pursuant to the district court's order dated August 11, 2008, see Docket 111, and 28 U.S.C. § 636(b)(1)(B).

## FACTS AND PROCEDURAL HISTORY

The following findings of fact are made from the testimony presented at the evidentiary hearing in this matter, and from the documents which are a matter of public record in Mr. New's underlying criminal case. Mr. New was indicted on two counts of involuntary manslaughter in violation of 18 U.S.C. §§ 1112 and 1153 for the June 17, 2005, deaths of Theodore Charles New, Sr. and Conrad Warrior. See Docket No. 1. It was alleged that Mr. New killed the victims by driving a motor vehicle in a grossly negligent manner with actual knowledge that his conduct was a threat to the victims' lives. Id. The gross negligence the government accused Mr. New of was driving while intoxicated. Id.

The day after the motor vehicle accident in which Mr. New and the two victims were involved, Federal Bureau of Investigations Special Agent Charles Cressalia interviewed Mr. New in his hospital room about the accident. A portion of the conversation between Agent Cressalia and Mr. New was recorded on audio tape. Mr. New made inculpatory admissions on this tape. Mr. New also made inculpatory admissions to law enforcement agents other than Agent Cressalia on two other separate occasions.

Attorney Gary Colbath represented Mr. New on the involuntary manslaughter charges. In the course of discovery, Mr. Colbath received the audio tape of Agent Cressalia's interview with Mr. New. Mr. Colbath listened to this tape several times. He also took the tape to the jail where he played it for Mr. New. In addition, a motion to suppress the statement was made and the audio tape was played at the suppression hearing at which Mr. New was present.[3]

Mr. New never told Mr. Colbath that the voice on the audio tape was not his. Mr. New also never told Mr. Colbath that there was any portion of the interview with Agent Cressalia that was missing from the audio tape. Additionally, Mr. Colbath testified that the flow of questions and answers on the audio tape made sense and gave him no reason to suspect that the audio tape had been altered. He also testified that there were no clicking noises or any other indication on the audio tape that would lead him to suspect that the recording device had been turned off at any point during the taping session or in any other way had been manipulated. Finally, Mr. Colbath testified that background noises in the hospital are audible on the tape and that, at no point during the tape did those background noises cease or change abruptly so as to

---

[3]Mr. New testified at the evidentiary hearing on his habeas petition that he had no recollection of Mr. Colbath ever having played the tape for him prior to trial and that the first time he heard the tape was at the trial. The court does not find this testimony credible and, to the extent it conflicts with the testimony of Mr. Colbath, the court credits Mr. Colbath's testimony.

3

indicate that the audio tape had been tampered with or that the recording device had been shut off at any point.

At the evidentiary hearing on his habeas petition, Mr. New was not able to testify to any part of the interview with Agent Cressalia that was missing from the audio tape. In fact, Mr. New testified that, although he remembers someone coming to his hospital room to interview him, he does not remember who nor does he remember any details of the interview.

Mr. New did testify that the transcription of the audio tape indicates 74 separate pauses in the conversation between himself and Agent Cressalia. Mr. Colbath testified that those pauses seemed entirely normal to him as pauses that occur during the ebb and flow of any conversation.

Mr. Colbath testified that his theory of defense at the trial was to present evidence from an accident reconstructionist and the nature of the injures of the people in the vehicle to argue that Mr. New was not the driver of the vehicle. As to Mr. New's three inculpatory statements, including the statement to Agent Cressalia, Mr. Colbath testified that it was his strategy to argue to the jury that Mr. New made the statements he did in an effort to be "helpful" to law enforcement but that, in reality, Mr. New recalled nothing about the accident or who was driving. In fact, Mr. New testified at trial to just that. Thus, Mr. Colbath's trial strategy was to argue to the jury that they should not

4

consider Mr. New's statements to law enforcement because they were not reliable.

Mr. Colbath testified that, if he had had evidence that the audio tape of the Cressalia interview had been tampered with, that evidence would have been helpful to him, but in light of Mr. New's two other statements to law enforcement, it would not have changed Mr. Colbath's trial strategy. Mr. Colbath testified that he would have still recommended that Mr. New testify in order to explain the three inculpatory statements he had made and that Mr. Colbath would still argue to the jury that it should disregard those three statements.

Mr. New was convicted at his jury trial and sentenced to a term of incarceration. The one claim remaining on his habeas petition for this court's determination is whether Mr. Colbath was ineffective in failing to have the audio tape of the Cressalia interview tested to determine if it had been tampered with.

# DISCUSSION

## A. STANDARD OF REVIEW[4]

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from his conviction and may move to vacate, set aside, or correct his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack,..." See 28 U.S.C. § 2255(a). A petitioner must file a § 2255 motion in the district that sentenced him. See 28

---

[4]The court notes that Mr. New filed his § 2255 motion within the one-year statute of limitations governing such motions, and, thus, his motion is timely. The one-year statute of limitations governing § 2255 motions is set forth in 28 U.S.C. § 2255(f). See 28 U.S.C. § 2255(f). The one-year statute of limitation runs from the *latest* of four specified dates. Id. Only one is relevant here–"the date on which the judgment of conviction becomes final." Id. A judgment is deemed final "where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed [or a petition for certiorari finally denied...]." United States v. Johnson, 457 U.S. 537, 543, n.8 (1982) (citation omitted); see also Clay v. United States, 537 U.S. 522, 527 (2003). The time for filing a petition for certiorari is 90 days after entry of the Court of Appeals' judgment. Clay, 537 U.S. at 525.

On July 18, 2007, the Eight Circuit denied Mr. New's direct appeal of his conviction and sentence and affirmed the district court's judgment. See United States v. New, 491 F.3d 369 (8th Cir. 2007). Mr. New did not petition the United States Supreme Court for a writ of certiorari. Thus, under § 2255(f), Mr. New's judgment of conviction became final on October 16, 2007, 90 days after the Eighth Circuit entered its order. The statute of limitations for filing a § 2255 motion would have expired on October 16, 2008. As Mr. New filed his § 2255 motion on August 4, 2008, before the deadline for doing so had passed, the motion is timely. Additionally, because the instant motion is the first § 2255 motion filed by Mr. New, the statutory restriction on successive motions is not an issue in this case. See 28 U.S.C. § 2255(h).

U.S.C. § 2255(e). When considering a petitioner's § 2255 motion, the district court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. Accordingly a claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994) (additional citations and quotation marks omitted).

**B.  Standard Applicable to Sixth Amendment Ineffective Assistance Claims**

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. U.S. CONST. amend VI. The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction. Id. at 687. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. The following passage from Strickland is instructive on this issue:

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.

Id. at 690.

The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment. Id. at 691. That is, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. Id. at 695. In other words, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In sum, a defendant must satisfy the following two-prong test. Id. at 687.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from

> a breakdown in the adversary process that renders the result unreliable.

Id. at 690.

"[J]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690; see also Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) ("There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment."). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Hall, 296 F.3d at 692; see also Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006), cert. denied, __ U.S.__, 127 S.Ct. 980, 166 L.Ed.2d 743 (2007) (rejecting the cumulative-error theory for post-conviction relief and holding that the "cumulative effect of alleged trial counsel errors is not grounds for granting habeas relief"). The court applies the above standard to the one remaining ground for habeas relief asserted by Mr. New.

**C.     Failure to Hire An Expert as to Tampering with the Audio Recording**

Mr. New argues that his counsel was constitutionally deficient for failing to hire an expert to testify that the audio recording of his statement made by Agent Cressalia had been tampered with. Although Mr. New asserted in his

9

petition that he asked for an attorney at the time Agent Cressalia interviewed him, but that Agent Cressalia told Mr. New he could not have an attorney, his testimony under oath at the hearing was not to that effect. Instead, Mr. New testified that he could not recall any of the details of the interview with Agent Cressalia. He did also testify that anytime he is interviewed, he usually asks for a lawyer. Mr. New claims that Agent Cressalia then tampered with the audio tape and excised the portion of the tape where Mr. New inquired about an attorney.

Mr. New testified extensively at his own trial about his interview with Agent Cressalia. See Jury Trial Transcript Vol. III, at pp. 483-488. This testimony included discussion of the tape recording of Mr. New's statement to Agent Cressalia that had been played at Mr. New's trial prior to New taking the witness stand. Id. Never did Mr. New testify at trial that he had asked Agent Cressalia for an attorney and that Agent Cressalia told him he was not entitled to one. Id.

Furthermore, at the evidentiary hearing on his habeas petition, not one shred of affirmative evidence was offered to show that the audio tape was altered in any way. Mr. New did not call an expert at his habeas hearing to testify to any apparent alteration of the tape. Instead, Mr. New relies entirely on the fact that there were 74 pauses in the tape as "evidence" that the tape was tampered with.

This is not evidence of tampering at all. As Mr. Colbath testified, these pauses seemed entirely normal to him in the ebb and flow of the conversation between Agent Cressalia and Mr. New. Furthermore, the flow of questions and answers seemed entirely normal. Finally, there was no interruption of the background noise in the hospital that was audible on the tape.

It is Mr. New's burden to show that his counsel was ineffective for failing to hire an expert. Strickland, 466 U.S. at 687-688. He has not done so. There was no objective indication from Mr. New or from the audio tape itself that would have led an attorney, acting with due care, to have formed a suspicion that the tape had been tampered with and to have secured expert testimony verifying that fact.

Moreover, Mr. New must establish prejudice as well. Hall, 296 F.3d at 692. As Mr. Colbath testified at the hearing in this case, evidence that the tape had been tampered with would not have altered his trial strategy in any way. This is because there were two other inculpatory statements made by Mr. New to other law enforcement officers that would have been admitted into evidence along with the audio tape of the Cressalia statement. Mr. New has presented no argument or evidence that would tend to show that the failure of Mr. Colbath to undermine the Cressalia audio tape would have prejudiced him, because the jury would have still heard the other two inculpatory statements. There is no basis for this court to reach a conclusion that the jury might have

reached a different verdict than the one it reached or that the result reached by the jury is not reliable.

## CONCLUSION

The court recommends dismissal of Mr. New's petition for habeas relief on the one ground remaining.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated October 27, 2009.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE